UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

**LEE COUNTY, ARKANSAS**                                                                 **PLAINTIFF**

v.                                    **CASE NO. 2:07-CV-00082 BSM**

**VOLVO CONSTRUCTION EQUIPMENT
NORTH AMERICA, INC.; SCOTT
CONSTRUCTION EQUIPMENT
COMPANY OF LOUISIANA, L.L.C.;
and JOHN DOES 1-10**                                                                     **DEFENDANTS**

## ORDER

Defendants Volvo Construction Equipment North America, Inc. ("Volvo") and Scott Construction Equipment Company of Louisiana, L.L.C. ("Scott") have moved for summary judgment as to all of the claims of plaintiff Lee County ("Lee County"), and Lee County has responded. For the reasons set forth below, the motion is granted.

### I.  UNDISPUTED FACTS

Volvo manufactured the 2002 Volvo G710 VHP Motor Grader (the "grader"), Serial Number 33838, at issue in this case. Scott originally sold the grader in January 2002 to the Louisiana Department of Transportation. On February 21, 2003, Scott sold the grader to Lee County and delivered it immediately after the sale. At the time of sale, the grader had 401 hours. Volvo's Basic Limited Warranty and Customer Assurance Program (extended warranty) was delivered to Lee County at the time the grader was purchased and delivered.

## II. PROCEDURAL BACKGROUND

On May 16, 2007, Lee County sued Volvo, Scott, Cummins, Inc., and John Does 1-10 in the Lee County Circuit Court. In its complaint, Lee County alleges that its employee, Leroy Matthews, was operating the grader in a safe and proper manner when he heard a "pop" due to the failure of a hose or line located in the engine compartment. Lee County states that the hose or line sprayed flammable fluid on the hot engine and turbocharger, which caused the grader to erupt in fire. Matthews stopped and stepped off the grader, and upon inspecting it, discovered that the turbocharger was on fire. The grader was destroyed. Lee County asserts breach of express warranty, breach of implied warranty, and strict liability. The case was removed to federal court on June 19, 2007.

Volvo moved for summary judgment on July 8, 2008, and Scott adopted Volvo's summary judgment motion on July 9, 2008. Cummins moved for summary judgment on July 18, 2008; however, Lee County's complaint against Cummins was dismissed with prejudice by stipulation filed on September 4, 2008.

## III. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)). "A party seeking summary judgment always bears the

initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

## IV. DISCUSSION

Defendants seek summary judgment as to plaintiff's breach of express warranty, breach of implied warranty, and strict liability claims.

A.  <u>Breach of Express Warranty Claims</u>

Defendants assert that Lee County has no claim for breach of express warranty because the limited warranty had expired and the hydraulic hoses, which Lee County's expert

contends is a possible cause of the fire, were not covered components under the extended warranty. The warranty provides in pertinent part:

> The Manufacturer or importer (MANUFACTURER) of Volvo trademarked Construction Equipment Products, service parts (collectively, Products) and the authorized dealer (DEALER) which sells said Products hereby extend to the purchaser (BUYER) of each new Product purchased from the MANUFACTURER or DEALER, the following limited warranty:
>
>> Subject to the exceptions set forth below, MANUFACTURER or DEALER will repair or replace any part of a newly purchased Product which proves to be defective in material or workmanship during the following period:
>>    6 months/1500 hours, whichever first occurs, full machine
>>    12 months/1500 hours, whichever first occurs, Compact Equipment, up to 100 net hp
>>    12 months/2500 hours, whichever first occurs, Volvo Engine
>>    12 months/2500 hours, whichever first occurs, Volvo remanufactured components
>>    12 months/2500 hours, whichever first occurs, Cummins Engine
>> (the Warranty Period) immediately following delivery of said product to the BUYER who first puts said Product into use. The foregoing limited warranty shall include the labor cost to accomplish the repair or replacement of the defective part.

Exhibit B, Volvo's motion for summary judgment ("Volvo's motion"). The Volvo Customer Assurance Program, or extended warranty, does not list "hydraulic hoses" as one of the components covered in that program. *Id.*

Defendants state that the original warranty expired because the full machine was only warranted for 6 months or 1500 hours, whichever first occurs, and the engine was only warranted for 12 months or 2500 hours, whichever first occurs. Defendants assert that more than 12 months had passed since the sale and the grader had over 2700 hours of usage at the

time of the fire. Defendants also state that the extended warranty did not cover hydraulic hoses, which Lee County's "purported expert" suspects is the "culprit or cause of the fire." A letter from William H. Ford, P.E. of Accident Reconstruction – Technical Investigations, LLC, to Lee County's insurer, states, "The eyewitness accounts and the condition of the evidence indicate that a hydraulic hose failed, causing a spray of oil to be drafted across the engine. A hot surface, likely the turbocharger, ignited the air/oil mixture and the fire spread to other portions of the engine compartment." Exhibit C, Ford letter, Volvo's motion.

Lee County asserts that the extended warranty covering the grader was in full force and effect at the time of the fire. Specifically, Lee County states that the grader had 2,497 hours when taken in for the most recent 300 hour regular complete servicing on January 23, 2006, and that the exact number of hours on the grader on the date of the loss is unknown.

The court finds that Lee County may not rely on the original warranty. Clearly, the grader had been in use for over 12 months. Additionally, according to the testimony of Lee County's employees, the grader had over 2700 hours of usage. When asked whether the grader was due for its 300-hour service at the time of the fire, Don McClendon, Lee County's Road Department Supervisor, testified, "Shouldn't have been. It should have been right close to it. We had 2,497 hours last serviced, but it was 27 something when it burned." Exhibit D, McClendon Dep. p. 54, Volvo's motion. Also, according to Ford's letter to Lee County's insurer, the origin and cause investigator found that the grader's hourmeter read about 295 hours on the day of the fire. Exhibit C, Volvo's motion. Furthermore, the

extended warranty did not cover hydraulic hoses, the failure of which appears to be the agreed upon cause of the fire. Because neither the original nor extended warranties apply, the court need not address defendant's argument that the breach of warranty claims are barred by the four-year statute of limitations. Summary judgment is granted as to Lee County's breach of express warranty claim.

B.      Breach of Implied Warranty Claims

Defendants assert that the breach of implied warranty claims are barred by the Volvo disclaimer, which provides:

> **DISCLAIMER OF IMPLIED WARRANTIES AND LIMITATION OF REMEDIES**
>
> THE FOREGOING WARRANTY TO BUYER IS EXCLUSIVE AND IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AND THERE IS NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURCHASE.
>
> REMEDIES AVAILABLE TO BUYER ARE LIMITED TO MAKING A CLAIM UNDER THE FOREGOING WARRANTY AND ARE EXCLUSIVE AND EXPRESSLY LIMITED TO OBTAINING THE PARTS AND LABOR IN ACCORDANCE WITH THE TERMS OF SAID WARRANTY.

Exhibit B, Volvo's motion. Defendants note that Arkansas Code Annotated § 4-2-316(2) provides in pertinent part:

> Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.

"Conspicuous" is defined in Arkansas Code Annotated § 4-1-201(b)(10) as follows:

> "Conspicuous", with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it.  Whether a term is conspicuous or not is a decision for the court. Conspicuous terms including the following:
>
>> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>>
>> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Lee County does not specifically address this issue in its response.

The court finds that the disclaimer language is sufficiently conspicuous to eliminate all implied warranties of merchantability and fitness.  *See, e.g.*, *Day v. Tri-State Delta Chems., Inc.*, 165 F. Supp. 2d 830, 835-36 (E.D. Ark. 2001).  Summary judgment is granted as to Lee County's breach of implied warranty claims.

C.   <u>Strict Liability Claims</u>

Defendants assert that Lee County's strict liability claim fails because there is no evidence that the grader, or any component thereof, was defective as of the time it was sold to Lee County.

> "A supplier of a product is subject to liability in damages for harm to a person or property if:
>
>> (1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product;
>> (2) The product was supplied by him or her in a defective condition that rendered it unreasonably dangerous; and

>(3) The defective condition was a proximate cause of the harm to a person or property."

Ark. Code Ann. § 4-86-102 (a). Lee County must prove a defect in design or manufacture which was a proximate cause of the injury, and thus must prove that the product was in a defective condition when it left the hands of the seller. *Higgins v. Gen. Motors Corp.*, 250 Ark. 551, 555, 465 S.W.2d 898, 900 (1971). "In the absence of direct proof that the product is defective because of a manufacturing flaw or inadequate design, plaintiff must negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant." *Id*. The mere possibility that a defendant sold a product which he should not have sold and that it caused the injury is not enough. *Williams v. Smart Chevrolet Co.*, 292 Ark. 376, 382, 730 S.W.2d 479, 482 (1987).

"The plaintiff is not required to prove a specific defect when common experience tells us that the accident would not have occurred in the absence of a defect." *Id*. "The mere fact of an accident, standing alone, does not make out a case that the product was defective, nor does the fact that it was found in a defective condition after the event." *Id*. "But the addition of other facts tending to show that the defect existed before the accident may make out a sufficient case." *Id*.

Defendants rely upon *Higgins*, *Williams, and Martin v. E-Z Mart Stores, Inc.*, 464 F.3d 827 (8th Cir. 2006), in support of their argument for summary judgment, and attempt to distinguish *Farm Bureau Insurance Company v. Case Corporation*, 317 Ark. 467, 878

S.W.2d 741 (1994). In *Higgins*, the plaintiff had owned the vehicle for four years and put 16,000 miles on it when the front brake hose ruptured, rendering the hydraulic braking system ineffective and allegedly resulting in an collision with another vehicle. 250 Ark. at 552, 465 S.W.2d at 898. The Arkansas Supreme Court held that the plaintiff's proof that the brake hoses were in a defective condition at the time he purchased the vehicle was deficient because the evidence did not "sufficiently negate the possibility that the rupture resulted from normal wear and tear or discount other various contingencies which may have caused the rupture for which the seller could not be held responsible under a theory of strict liability." *Id*. at 556, 465 S.W.2d at 900. *See also Martin*, 464 F.3d at 828, 830 (upholding district court's grant of summary judgment because plaintiffs offered no evidence supporting the negation of other causes, such as wear and tear or misuse, when one of two cigarette lighters in plaintiff's shirt pocket caught fire).

Similarly, in *Williams*, the Arkansas Supreme Court affirmed the trial court's grant of directed verdict on the plaintiff's strict liability claim finding that it could not "say that when a car door suddenly flies open while the car is traveling on a gravel road at 10 miles per hour common experience tells us that it could not have happened absent a defect." 292 Ark. at 383, 730 S.W.2d at 483. The Court noted that the plaintiff failed to "negate any cause of the accident due to driving error or control" and that the plaintiff's expert "could not say that any of the problems he found were defects or that they would cause the door to come open." *Id*. at 384. The Court concluded that the plaintiff's proof did not "go beyond

speculation or conjecture nor raise a reasonable inference that the defect was the cause of the accident." *Id.*

In *Farm Bureau*, the plaintiff had owned a tractor for four months and operated it for 100 hours when it was destroyed by fire. 317 Ark. at 468, 878 S.W.2d at 742. The owner of the tractor testified that the tractor had not malfunctioned prior to the burning and that none of the lines or hoses leaked prior to the fire. *Id.* at 472, 878 S.W.2d at 744. The driver of the tractor testified that the fire began in an area through which the hydraulic lines ran. *Id.* A mechanical engineer testified that he believed that "the separation of the fitting progressed from a small hole from which a fine mist of fluid escaped to a total separation which emitted a stream of hydraulic fluid directly onto the heated turbocharger or exhaust manifold." *Id.* He also testified that in his opinion the coupling had separated before the fire because an identical fitting located two inches away had not separated, which supported the plaintiff's theory that the fitting that failed was defective before the accident, and "he found no other condition or circumstance which could possibly have caused the fire." *Id.* at 472-73, 878 S.W.2d at 744. The Arkansas Supreme Court reversed the trial court's grant of a directed verdict as to the plaintiff's strict liability claim stating, "There is no reasonable argument to be made that a tractor which suddenly catches fire during normal operation is not 'unreasonably dangerous.'" *Id.* at 473, 878 S.W.2d at 744. The Court also found that the mechanical engineer's testimony "at least raised a reasonable inference that the fitting that

separated was defective" and caused the fire, and other possible causes of the fire were eliminated. *Id.*, 878 S.W.2d at 744-45.

Defendants assert that the grader was not a new piece of equipment, and Lee County's cause report does not give any indication how or why the hydraulic hose may have failed, after over 2700 hours of usage. Defendants also assert that these facts require proof of a specific defect, unlike in *State Farm*, because Lee County has not negated other potential causes of the fire, such as the failure to inspect the hoses or engine compartment for evidence of an aging hose or leakage or failure to replace a hose.

The court notes that Eric Benstock, a consulting engineer employed by McDowell Owens Engineering, and apparently hired by Volvo, opined that the "fire is likely the result of a failed hydraulic component or loose connection that caused hydraulic fluid to be sprayed onto the turbocharger housing and subsequently ignite." Exhibit E, Benstock Report, pltf.'s resp. He further stated that "there is no evidence to indicate which component may have failed and/or caused a failure, or if any connection had become loose," and "there is no evidence to indicate that there is an equipment design defect or manufacturing defect created by Volvo that was causally related to this incident." *Id.*

Defendants also rely on Don McClendon's deposition testimony, in which he stated that the hose "would be a wear item if you had malfunctions in your hydraulic system, like overheating," and that the hoses require inspection and replacement as needed, but noted that he has a 1975 excavator with some original hoses on it. Exhibit D, McClendon Dep. p. 35-

36, Volvo's motion. He also testified that a daily inspection probably would have revealed that there was a bad hose if it had been leaking, and the operator would not have used the grader that day. *Id*. at 54, 67. He stated that the hydraulic hoses were inspected every day "just from sight, because you can see if one is leaking," but noted that a visual inspection would not reveal a loose hydraulic line, unless it is leaking, and a person would have to "[r]each up and g[e]t ahold of it . . . [and] shake it" to determine if a hydraulic line needs to be tightened." Exhibit G, McClendon Dep. p. 17, 23, 97 pltf.'s resp. The hoses are thoroughly checked every 300 hours, which entails ensuring that there are no cracks in them and that they are all tight and not leaking. *Id*. at 23. McClendon also testified that a record indicates two loose and leaking hydraulic lines on the transmission pump in the engine compartment were tightened at the beginning of 2006. *Id*. at 95-96.

In his affidavit, Leroy Matthews, the grader operator, states that prior to operating the grader on the day of the fire, he opened and inspected the entire engine compartment, including the hydraulic hoses, and the ground beneath for any leaks. Exhibit H, Matthews Aff., pltf.'s resp. He states that none of the hydraulic hoses were leaking, and none showed any indication of any problems. *Id*. He also states that he did not observe any leaking, deterioration, or loose fittings on the hydraulic hoses at the 300 hour service, and that there had been no problems with any of the hydraulic hoses at any time before the fire. *Id*.

Lee County argues that it is undisputed that the fire was accidental, and the three experts addressing the issue agreed that the fire was caused by a high pressure hydraulic line

that failed. *See* Exhibit B, Fire/Fraud Investigations, Inc. Report, pltf.'s resp.; Exhibit C, ARTI, L.L.C. Report, pltf.'s resp. (noting that the mushroomed ends of the hydraulic hose indicate that they were loose early in the fire); Exhibit D, Sissom Report, pltf.'s resp.; Exhibit E, Benstock Report, pltf.'s resp.; Exhibit F, SEA, Ltd. Report, pltf.'s resp. Lee County also argues that there were no indications of any other problem or defect. Lee County states that the entire engine compartment, including the hydraulic lines had been inspected by Matthews a few minutes prior to the fire, and was completely serviced on a regular 300 hour basis.

The court finds that Lee County has no direct proof that the grader was defective because of a manufacturing flaw or inadequate design. Also, as in *Higgins*, Lee County has not sufficiently negated the possibility that the failure of the hydraulic hose resulted from normal wear and tear or the natural loosening of the hose connection. This case is clearly distinguishable from *Farm Bureau*, in which the tractor was only four months old with 100 hours of usage, because in this case the grader was over four years old and had approximately 2700 hours of usage. Therefore, summary judgment is appropriate as to Lee County's strict liability claims.

Accordingly, defendant Volvo Construction Equipment North America, Inc.'s motion for summary judgment (Doc. No. 30), and defendant Scott Construction Equipment Company of Louisiana, L.L.C.'s motion for summary judgment (Doc. No. 36), are granted. Plaintiff Lee County's complaint is dismissed with prejudice.

IT IS SO ORDERED this 20th day of November, 2008.

_____
UNITED STATES DISTRICT JUDGE